<em>Hartford,</em><br>
June, 1845.

Bissell<br>
<em>v.</em><br>
Ames.

---

## THE QUINEBAUG BANK *against* FRENCH.

*A* first mortgaged a piece of land to *B*, to secure a debt due from *A* to *B*, and afterwards, *A* mortgaged the same land to *C*, to secure him against indorsements, made, or to be made, by him, for *A*, at the bank. After these transactions, *viz.* on the 5th of *April*, 1838, *D* attached *A's* equity of redemption, in a suit against him; and on the 9th of the same month, *A* gave a release deed of the premises to *C*. On the 2nd of *April*, 1839, an arrangement was made between *C* and *E*, in pursuance of which, *C*, by a writing under his hand and seal, on the back of *A's* mortgage deed to him, executed to *E* an assignment of all *C's* right and title to the premises therein named, and of all his claims thereto, by virtue of his liabilities for *A*; and *E*, at the same time, executed a bond to *C*, conditioned to indemnify him against such liabilities; after which, on the same occasion, *C* executed a release deed to *A* of his interest in the mortgaged premises, *E* making no objection thereto; and then *A* executed a warranty deed thereof to *E*, subject only to the debt of *B*. Some time afterwards, *D*, having recovered judgment in his suit against *A*, had the execution levied on *A's* equity of redemption, as subject to *B's* mortgage only, which was duly set off to *D*. On a bill to redeem, and for a conveyance of title, brought by *D* against *E*, it was held, 1. that if *C's* incumbrance was removed, before the levy of *D's* execution, it was his right and duty to take all the right of *A*, without any intervening incumbrance; 2. that the state of the record, at the time of the levy, was a safe guide to *D*, in making such levy; 3. that the release deed given by *C* to *A*, on the 2nd

*Hartford,*
June, 1845.

The Quine-
baug Bank
*v.*
French.

of *April* 1839, was sufficient evidence to *D*, that *C's* mortgage debt was no longer outstanding; 4. that the warranty deed given by *A* to *E*, immediately after receiving the release deed from *C*, tended rather to corroborate, than to weaken, such evidence; 5. that the arrangement of the 2nd of *April* 1839, between *C* and *E*, showed no design to keep on foot *C's* mortgage; 6. that *D* was not chargeable with any laches in not making further enquiry, which should postpone his right; 7. that consequently, *D's* execution was correctly levied, and he was entitled to redeem, on payment of the mortgage to *B*.

THIS was a bill in chancery to redeem mortgaged premises, and for a conveyance of title.

On the 7th of *October*, 1831, *Lewis Bradford* mortgaged a piece of land in the city of *Hartford*, whereof he was then seised in fee, to *Horace Olcott*, to secure a note of that date for 650 dollars, payable in ten years, with annual interest. On the 25th of *April*, 1837, *Bradford*, by a warranty deed, in the usual form, conveyed the same land, free of incumbrances, to *Horace Goodwin*, to secure a bond of 5000 dollars, which *Bradford* had given to *Goodwin*, to secure him for indorsements at the *Farmers and Mechanics Bank*, amounting to 1900 dollars, and for the indorsement of all such notes as *Goodwin* might thereafter indorse, at that bank, for *Bradford;* the condition reciting that he had agreed to indorse for *Bradford* a sum not exceeding, at any one time, 4000 dollars. On the 9th of *April*, 1838, *Bradford* conveyed to *Goodwin*, by his release deed of that date, all his interest in the mortgaged premises and on the 2nd of *April*, 1839, *Goodwin* reconveyed, by a release deed, all his right in the premises, to *Bradford.* Afterwards, on the same day, *Bradford* conveyed to *Joseph S. French*, the defendant, all title to the premises, by a warranty deed in the usual form, subject only to the incumbrance of the mortgage to *Olcott*, above-mentioned. On the 23rd of *December,* 1840, *Olcott* released to the defendant, by deed of that date, all his right to the premises. All these deeds purport to be given for valuable considerations; and they were all duly executed, acknowledged and recorded. After *Bradford's* deed to *French,* the latter entered into possession of the mortgaged premises, and has continued therein.

It was proved, that *Goodwin* had agreed to indorse *Bradford's* notes, as stated in the condition of *Bradford's* mortgage deed to him, and had, at one time, indorsed notes, under

such agreement, to the amount of 3300 dollars; and at the time he received the release from *Bradford*, he was responsible for him, on such indorsements, to a large amount, and so continued until the conveyance to *French*.

There was no proof as to the circumstances under which *Goodwin* received the release deed from *Bradford*, or relative to any arrangement between them, as to the continuance or discharge of *Goodwin's* mortgage on the premises.   But it was proved, that *Goodwin* had long been desirous of being released from his condition as indorser of *Bradford's* paper. On the 2nd of *April*, 1839, an arrangement was made between *French* and *Goodwin*, to the effect, that *French* should assume *Goodwin's* liabilities at the bank for *Bradford*, and indemnify him, and receive from him an assignment of his security for such liabilities.) Accordingly, *French* executed his bond to *Goodwin*, in the penal sum of 4000 dollars, the condition of which required *French* to pay said notes, as they should respectively become due, and save *Goodwin* harmless from his liabilities thereon ; and *Goodwin*, by a writing under his hand and seal, on the back of *Bradford's* mortgage deed to him, executed to *French* an assignment of all his (*Goodwin's*) right and title to the premises therein named, and of all his claims thereto, by reason of his liabilities on said notes. Immediately after the execution of these instruments, and on the same occasion, *Goodwin* released to *Bradford* his interest in the premises, by the deed already referred to ; to which *French* made no objection, but thereafter received the abovementioned warranty deed from *Bradford*.

On the 5th of *April*, 1838, the plaintiffs attached *Bradford's* right in the mortgaged premises, in two suits in their favour against him ; in which suits they recovered judgments, in *September*, 1839 ; in one, for 649 dollars, 34 cents, damages and costs, and in the other, for 650 dollars, 21 cents, damages and costs.) On the 17th of *December*, 1839, executions on these judgments were levied on *Bradford's* equity of redemption in the mortgaged premises, subject to said mortgage to *Olcott*, which was appraised at 3842 dollars, 28 cents, and was set off to the plaintiffs, in satisfaction of the executions, in such proportion as the amount thereof bore to such appraised value ; and the plaintiffs, thereby became the

*Hartford,*
*June, 1845.*

The Quine-
baug Bank
*v.*
French.

owners of that proportion of *Bradford's* equity of redemption, which is still vested in them.

The plaintiffs afterwards applied to *French* to redeem the premises, upon payment to him of *Olcott's* mortgage debt; to which *French* refused his assent, claiming that the mortgage to *Olcott* had never been extinguished, or in any manner satisfied, and as he had taken the place of *Goodwin*, he had all his rights under the mortgage; and that the plaintiffs could not redeem, except upon payment of the notes indorsed by *Goodwin*, under said security.

Upon these facts, the case was reserved for the advice of this court, as to the terms upon which the plaintiffs were entitled to redeem, and what decree should be passed.

*Hungerford* and *Cone*, for the plaintiffs, contended, 1. That the conveyance by *Bradford* to *Goodwin*, of the 9th of *April*, 1838, extinguished the mortgage. *Starr* v. *Ellis*, 6 *Johns. Ch. R.* 395. *James* v. *Johnson*, Id. 423, 4. *Forbes* v. *Moffatt*, 18 *Ves.* 384. *Clark* v. *Jenkins*, 5 *Pick.* 280. The cases of *Baldwin* v. *Norton*, 2 *Conn. R.* 161. and *Lockwood* v. *Sturdevant*, 6 *Conn. R.* 373. were also referred to and commented on.

2. That if it did not, the release by *Goodwin* to *Bradford*, had that effect; at least, it exonerated the land from the incumbrance; because, in the first place, the title to the land conveyed to *Goodwin*, by *Bradford's* mortgage, continued in *Goodwin*, notwithstanding the assignment of the bond to *French*, until it was released to *Bradford*; inasmuch as this title could only be transmitted by deed; the effect of the assignment being merely to convert *Goodwin* into a trustee for *French*. *Vose* v. *Handy*, 2 *Greenl.* 322. 8 *Mass. R.* 559. *Warden* v. *Adams*, 15 *Mass. R.* 236. *Parsons* v. *Welles*, 17 *Mass. R.* 425. *Harrison* v. *Owen*, 1 *Atk.* 520. *Crane* v. *Marsh*, 4 *Pick.* 136. *Conrad* v. *Atlantic Insurance Company*, 1 *Pet. R.* 441. *Lawrence* v. *Knapp*, 1 *Root* 248. *Phelps* v. *Sage*, 2 *Day* 151. *Crosby* v. *Brownson*, Id. 425. *Porter* v. *Seeley*, 13 *Conn. R.* 574. *Smith* v. *Vincent*, 15 *Conn. R.* 1. Secondly, *Goodwin*, with the knowledge of *French*, and without objection from him, having released and transferred the title to *Bradford*, no longer remained the trustee of *French*; nor did *Bradford*, who accepted the

transfer, with the like knowledge and approbation of *French*, become his trustee, and could not have been foreclosed by him.

*Hartford,*
*June, 1845.*

The Quine-
baug Bank
*v.*
French.

3. That if the mortgage was not extinguished, by the release to *Bradford*, it was, by *Bradford's* conveyance to *French*. For, in the first place, the merger is absolute at law. Secondly, it does not appear, that there was any intention to keep it on foot, or any benefit or other circumstance, which, in equity, would prevent a merger. Thirdly, it does appear affirmatively, that *Bradford* gave a deed warranting the property free from all incumbrances, except the mortgage of *Olcott;* and this would not have been done, had not this mortgage to *Goodwin* been supposed to be extinguished. Fourthly, if the mortgage, as between the parties, was not extinguished, it was in respect to the plaintiffs, who had no knowledge of the assignment. The plaintiffs were under no obligation to look beyond the record title, to ascertain its condition. There is no feature in our laws regarding real estate, more prominent than that the true title should appear upon the record. *French* v. *Gray*, 2 *Conn. R.* 109. *North* v. *Belden*, 13 *Conn. R.* 380. *Hart* v. *Chalker*, 14 *Conn. R.* 79. *Smith* v. *Vincent*, 15 *Conn. R.* 1. *Orvis* v. *Newell*, 17 *Conn. R.* 97.

*Toucey*, for the defendant, insisted, That the premises were still subject to the *Goodwin* mortgage. In support of this position, he remarked:

1. That the legal title which was in *Olcott*, is now vested in the defendant, by virtue of *Olcott's* release deed of the 23rd of *December*, 1840.

2. That the attachment of the plaintiffs was subject to the *Goodwin* mortgage; the latter being executed on the 25th of *April*, 1837, and the former served on the 11th of *April*, 1838.

3. That the assignment of the *Goodwin* mortgage to the defendant, was effectual.

4. That the release deed of *Goodwin* to *Bradford*, did not affect the defendant's claim; because, in the first place, the legal title was not in *Goodwin*, but in *Olcott*. Secondly, the assignment made by *Goodwin* to the defendant, carried the security with the debt. Thirdly, the deeds of the 2nd of

*April,* 1839, are to be taken together, and to have the same effect as if executed to the defendant only.

5. That there was no merger, by reason of the lien by attachment.

WILLIAMS, Ch. J.    The defendant claims he is proprietor of the *Goodwin* mortgage, which he says, is not extinguished. He claims, that he has the legal estate, and also has at least equal equity.    As it is the peculiar province of a court of equity to protect equitable interests, we do not think that the fact of the plaintiffs having taken up *Olcott's* mortgage, can have any important influence upon the question before the court.    We are to enquire what are the equitable rights of the parties.    It is admitted, that the plaintiffs attached the land subject to the claims of *Olcott* and *Goodwin.*    But they claim, that before the levying of their executions, they examined the records, and found, that *Goodwin's* lien was removed, and that he had executed a release deed to *Bradford;* and we think, there can be no doubt that, if *Goodwin's* incumbrance was removed before the levying of an execution, by an attaching creditor, it would be the right and also the duty of the attaching creditor, to take all the right of the debtor, without any intervening incumbrance.    The defendant, however, claims, that *Goodwin's* mortgage was still existing ; that it was assignable by *Goodwin,* and was actually assigned by him, by the instrument of the 2nd of *April* 1839 ; and the defendant then became vested with all the right that *Goodwin* had, by his mortgage ; and surely, there is no doubt that by the assignment of a debt, the equitable interest in the lands given to secure it, may pass.    But long before this assignment, *Goodwin* had received an absolute deed of the land itself ; and it is hardly to be supposed he was to hold the land and the debt too.    His title to the land seems to be absolute ; and yet it is claimed his debt still exists, and is an assignable interest.

It is true, that this court decided, in *Baldwin* v. *Norton,* 2 *Conn. R.* 166. that where, to adjust the claims between the parties, there was a release of the land, by the mortgagor to the mortgagee, and delivery up of the note by the mortgagee, this would not operate so to destroy the lien of the mortgagee as to give priority to a subsequent mortgagee ; and we

*Hartford,*
June, 1845.

The Quine-
baug Bank
*v.*
French.

certainly can have no doubt of the soundness of the law of that case. But in the case before us, there is an entire silence as to the purpose for which this deed was given. It was not accompanied with any discharge of the claims secured by the mortgage; and long after it was given, *Goodwin*, by giving an assignment of his mortgage, conducts precisely as if such deed never had been held by him. Unless the intent of the parties was, to extinguish the lien of *Goodwin*, to the extent of the value of *Bradford's* interest in this land, we can see no legitimate object in this deed. Without deciding how this deed would affect this case, if it stood alone, we mean only to say, it differs much from the case cited, as there the object shown was fair and just, and here no object at all is shown.

Aside from the objections founded upon the deed of *Bradford* to *Goodwin*, there are other transactions more material. The record shows, that after this title was thus conveyed to *Goodwin* by *Bradford*, *Goodwin* reconveyed to *Bradford*, and the defendant then took a new title under *Bradford*, by receiving from him a deed. The defendant says, this cannot affect the plaintiffs, as they can now get all the rights *Bradford* had, when they attached, he claiming no more than *Goodwin* could. But it must be remembered, that the plaintiffs are at their peril to levy their execution correctly. They must take the interest of the debtor, as it is. If there is no subsisting mortgage, they must set off the land by metes and bounds. If there is a mortgage, they must examine the records to see whether it is discharged or not. If it is discharged, and this appears upon record, they will be charged with laches, if they do not notice that fact, and levy accordingly; or if lands are attached, upon which are two mortgages, and before execution is taken, one of the incumbrances is removed, and the land released of record, and the creditor should levy his execution as if both mortgages were outstanding, the interest he would take would be as much more than he ought to take, as was the amount of the discharged mortgage. Of course, that levy must be void, or the debtor must be subjected to a serious injury. It must then be as important to a levying creditor, as to a purchaser, to know the state of the record; and he acts accordingly; though we do not mean to say, that this is the only evidence.

HARVARD LAW LIBRARY

From the evidence in the present case, it appears, that nearly a year after *Goodwin* appeared upon the record as the owner of this land, he gave a release deed to *Bradford,* the former owner, and thus revested in *Bradford* all the right he ever acquired by virtue of his several deeds. A release deed is the ordinary evidence in this state, that the mortgage debt is paid, or the security given up, as it is under the hand and seal of the party ; and when recorded, as in the present case, it was a declaration to all the world of that fact, and that the public might safely deal with the mortgagor as if no mortgage had been given. And were we to hold, that those who trusted to such record evidence, were not safe, vain would be our registry laws, and vain would be further attempts to enforce them. Had the case rested here, it would hardly be claimed but that the plaintiffs proceeded correctly in their levy ; but the record further shows, that when the mortgagor obtained this release, he himself conveyed to *French,* the defendant ; and if we look to the record alone, this rather adds to the strength of the plaintiffs' claim ; for the mortgagor, having now obtained the title of this mortgagee, immediately proceeds, as owner, to sell the land, and gives a warranty deed of the same, subject only to a prior mortgage. Looking at the record then only, every thing confirms the proceedings of the plaintiffs, in the case. Without enquiring, therefore, how far there is a technical merger, the court proceeds upon the simple ground that the record speaks a language that cannot be misunderstood, and shows beyond a doubt, that so far as the record speaks, *Goodwin's* mortgage has ceased to exist.

The defendant says, however, there is enough shown to put the party upon enquiry as to the real state of this mortgage debt, and cites the case of *Bolles* v. *Chauncey,* 8 *Conn. R.* 390. There, the record title remained unchanged ; and therefore, the court held, that the fact that the mortgagor showed that the note was taken up, was not sufficient : the party affected should have enquired as to this outstanding legal title. But here, the legal title being settled upon the record, there seems nothing to enquire for, unless whether the deed of *Goodwin* is genuine : if it is, its import is plain, and requires no explanation.

If we proceed to enquire into the other facts, the result

must be the same. What are they? That *Goodwin* was anxious to be freed from his liabilities. That would be done in the same manner, as it respected *Goodwin*, whether *French* comes in as purchaser, or as mortgagee. *French* received an assignment of *Goodwin's* claim. That he might do, as well if he had agreed to complete the purchase of *Bradford*, as if he intended to remain the mortgagee. He must have consented to the arrangement, by which *Bradford* was to receive the release deed; for he immediately takes a warranty deed from *Bradford*; and why *Bradford* should have given this warranty deed, while this mortgage to *Goodwin* was outstanding, is certainly unexplained. The import of these facts is very equivocal. If *French* agreed to buy this land of *Bradford* at a given price, and in part payment extinguish the lien of *Goodwin*; and *Bradford*, on his part, agreed to remove this incumbrance of the plaintiffs; we think that they would quite as probably have pursued the course they did, as if their design was to keep in existence that mortgage. Indeed, nothing would have been more natural, if there were two mortgages upon a piece of land, and the mortgagor was about to sell it, by warranty deed, than that he should have excepted both the mortgages; and nothing more improbable, than that he should have excepted one of the mortgages, and not the other, if both were outstanding. If the evidence was admissible to show a different intent from what appears on the record, that evidence ought to be such as would leave no doubt of the real object of the parties. So far from relieving doubts, in this case, the evidence, or rather the want of evidence, tends to increase them. We are not told for what consideration the deed to *Goodwin* was given; we are not shown in what character *French* came in, whether as surety for *Bradford* merely, or as purchaser of the estate. If he came in as purchaser, we are not told, whether he was not by contract to take up all the incumbrances on the land, or in what way the parties contemplated their removal. If he was merely a surety, we are not told why he did not take a deed from *Goodwin* to himself, instead of the circuitous course which was taken; nor can we understand why *French*, if he acted merely in that character, came at once to take an absolute deed, and to take, and ever since to hold, possession.

*Hartford,*
June, 1845.

The Quinebaug Bank
*v.*
French.

In short, if we go aside from the record, we seem to be left to mere conjecture, as to facts which would be important to know, and which seem to be within the power of the defendant to furnish. So far as the facts are before us, we see nothing to remove the effect of the record; and were it otherwise, we think there was nothing to lead the party away from the record to enquire into other facts evincive of another intent. Whatever private agreement these parties may have made, it cannot operate upon the persons ignorant of it, in face of the public declaration upon the record.

We think, therefore, that the plaintiffs' levy was correct; and advise the superior court to allow them to redeem, on payment of the *Olcott* mortgage.

In this opinion the other Judges concurred.

Decree for plaintiffs.